■ C. Sue Cunningham, Respondent, v Dan L. Cunningham, Appellant. — Appeal from an amended judgment of the Supreme Court in favor of plaintiff, entered February 8, 1984 in Tompkins County, upon a decision of the court at Trial Term (Bryant, J.), without a jury.

Plaintiff and defendant were married on July 1, 1977 and they bought a house in Morgantown, West Virginia, where they lived and worked. To purchase this house, plaintiff contributed $27,000,* which were the proceeds from the sale of a house previously owned by plaintiff, and the parties jointly signed a note and mortgage for the remainder of the purchase price. In February, 1978, the parties sold their Morgantown house, realizing $40,000, and, as joint tenants, they purchased a house in the Town of Dryden, Tompkins County. This house was financed with the $40,000 and a loan secured by a mortgage for the balance of $55,000. Throughout this period, all expenses were paid from pooled resources.

In April, 1981, the parties separated and plaintiff remained in the house. Beginning at this time, defendant made 10 monthly payments of $200 to be used for the monthly mortgage payments, which were about $400 (principal and interest). During

---

* There appears to be some dispute as to the precise amount originally contributed by plaintiff. The trial court determined the amount to be $27,000 and, because there is support in the record for this conclusion, we will likewise consider $27,000 to be the amount of plaintiff's initial contribution.

this time, defendant also made a $700 payment for taxes. Since February, 1982, defendant has made no payments toward the maintenance of the house, ostensibly because plaintiff was using the monthly payments made by defendant for purposes other than those which defendant intended. It further appears from the record that since February, 1982, plaintiff has made repairs to the house in the amount of $1,120.56. The record also reveals that in July, 1983, plaintiff paid $8,442.62 to satisfy a "balloon" component of the note and mortgage on the property. Plaintiff also paid the taxes on the property and insurance on the house during this period. In September, 1983, the house was given an appraised value of $119,300. At this time there was an outstanding mortgage balance of $42,970.41, leaving the equity at approximately $76,329.59.

Plaintiff commenced this action for divorce and equitable distribution. Defendant counterclaimed for the same relief. After a nonjury trial, plaintiff was granted a decree of divorce and defendant's counterclaim for divorce was dismissed. The parties apparently had agreed to distribution of all property except the equity of the marital residence, of which the trial court awarded 90% to plaintiff and 10% to defendant after plaintiff was given credit for mortgage payments made during her exclusive possession. This distribution was based on many factors, including the parties' respective ages and salaries, but especially on the trial court's perception of the parties' contributions to the marriage. This appeal by defendant followed and concerns only the distribution of the equity of the marital residence.

The house in Dryden is unquestionably marital property inasmuch as it was purchased in the joint names of plaintiff and defendant (Domestic Relations Law, § 236, part B, subd 1, par c). It is apparent, however, that plaintiff contributed $27,000 of her separate property (Domestic Relations Law, § 236, part B, subd 1, par d) toward the creation of this marital asset and she is entitled to a credit for this contribution (see *Parsons v Parsons,* 101 AD2d 1017, 1017-1018; *Duffy v Duffy,* 94 AD2d 711, 712). Thus, the trial court's failure to consider the concept of separate property and of a credit for plaintiff's contribution to the creation of the marital property requires that the order be modified accordingly.

In this regard, our review of the record reveals that the equity of the house includes other separate property which was contributed by plaintiff. The $8,442.62 balloon mortgage payment was made by plaintiff with her sole funds and she is entitled to a credit for such contribution. Likewise, the $1,120.56 paid by

plaintiff for repairs to the marital property should be credited to her. Thus, before the equity in the Dryden house is distributed, plaintiff is entitled to a credit of $36,563.18. The balance of the equity must be divided in accordance with the statutory principles governing equitable distribution (Domestic Relations Law, § 236, part B, subd 5, par d).

The record reveals that plaintiff is 44 years old and earns $30,000. Defendant is 37 years old and earns $34,000. The parties' salaries have risen at comparable rates since they moved to Dryden and they each have made contributions on their own behalfs to pension funds. Because plaintiff is seven years older than defendant, however, her future earning capacity is of shorter duration, as is the period during which she can contribute to her pension fund. The parties' other property, including furniture, cars, and savings accounts, has been divided by the parties, apparently in a manner consistent with the principles of equitable distribution. Until the time of the separation, all familial expenses were met with pooled resources and can be considered to have been shared equally. Plaintiff, however, has had full responsibility for the maintenance of the Dryden house since defendant stopped his monthly payments and has expended substantial sums for taxes, insurance, and the like. No children were born of the marriage and, although plaintiff receives child support for a child born of a previous marriage, plaintiff incurs additional expense in supporting her mother, who lives in the Dryden house. There is nothing to indicate that defendant has similar responsibilities. With these facts prevailing, we are of the view that, after plaintiff receives credit for separate property as discussed above, the equity of the Dryden house should be distributed 65% to plaintiff and 35% to defendant.

Amended judgment modified, on the law and the facts, without costs, by reversing so much thereof as divided the equity of the marital residence with 90% to plaintiff and 10% to defendant; the equity of the marital residence should be distributed with 65% to plaintiff and 35% to defendant after crediting plaintiff with $36,563.18 from said equity; and, as so modified, affirmed. Main, J. P., Casey, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.